**OPINION ON REHEARING**

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

Jerry N. Beattie; Judith F.
Beattie,

  *Plaintiffs-Appellants,*

v.

Nations Credit Financial Services
Corporation; Bank of America,
formerly known as Nationsbank,
N.A.; Nations Credit
Manufactured Housing
Corporation,

  *Defendants-Appellees,*

and

C&S Family Credit, Incorporated;
C&S Sovran Credit Corporation;
Interlink Mortgage Services,

  *Defendants.*

National Association of Consumer
Advocates,

  *Amicus Supporting Appellants.*

No. 02-1744

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Margaret B. Seymour, District Judge.
(CA-00-2005-6-24)

Argued: February 26, 2003

Decided: May 27, 2003

Decided on Rehearing: June 27, 2003

Before NIEMEYER and TRAXLER, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** Alton Lamar Martin, Jr., CLARKSON, WALSH, RHENEY & TURNER, P.A., Greenville, South Carolina, for Appellants. William Stevens Brown, V, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Greenville, South Carolina, for Appellees. **ON BRIEF:** Wes A. Kissinger, CLARKSON, WALSH, RHENEY & TURNER, P.A., Greenville, South Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

PER CURIAM:

Jerry and Judith Beattie ("Beatties") brought this diversity action against the Bank of America and its subsidiary NationsCredit Financial Services Corporation ("NationsCredit") for, among other things, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), libel, and negligence. The district court[1] granted NationsCredit's motion for summary judgment, and the Beatties appeal. We affirm.

---

[1]The Honorable Margaret B. Seymour, United States District Judge for the District of South Carolina.

## I.

On December 17, 1993, the Beatties entered into a home loan agreement with NationsCredit in which the debt, evidenced by a promissory note, was secured by a mortgage on the Beatties' residence in Greenville, South Carolina. Several of the loan statements the Beatties received in 1999 did not reflect specific account activity, such as transactions from the prior month. However, the statements did show a decrease in the balance due on the loan. They claim to have made repeated attempts, by telephone and in writing, to contact NationsCredit about the status of their account, but they did not receive a response.

On October 11, 1999, the Beatties received, from Interlink Mortgage Services, a copy of a Lost Mortgage Satisfaction affidavit ("LMS")[2] signed by NationsCredit's vice president Robert Hardman. The LMS, filed with the Greenville County, South Carolina Register of Deeds on September 8, 1999, indicated that the Beatties' mortgage was satisfied. Even so, the Beatties concede that they have never paid all of the amounts due on the loan. Armed with notice of this filing, they stopped making monthly payments. Despite the filed LMS, NationsCredit attempted to collect the debt and informed the Beatties that their mortgage was in default. At some point after the LMS was filed, NationsCredit sent the Beatties' account to its internal foreclosure department.[3] The Beatties deposed James Bright who had denied them credit based on his review of the Beatties' credit report. This report, he stated, revealed that their mortgage with NationsCredit was "in foreclosure."[4] The Beatties filed the present action against NationsCredit on June 23, 2000.

---

[2]A "Lost Mortgage Satisfaction" is an affidavit that the creditor (mortgagee) files with the county indicating that the original mortgage was lost. This particular affidavit further provided that the debt secured by the lost mortgage was satisfied and the mortgage cancelled.

[3]NationsCredit indicates that the LMS was filed in error, so the Beatties' mortgage was listed as delinquent in NationsCredit's records. This delinquency status resulted in the collection activities.

[4]Although Mr. Bright testified that the Equifax credit report he reviewed indicated that the Beatties' mortgage with NationsCredit was in foreclosure, there is no additional evidence to support this contention. The Equifax credit report in the record does not mention a foreclosure. Also, the Trans Union credit report in the record only states that the mortgage was delinquent, not in foreclosure.

## II.

We review de novo the district court's decision to grant Nations-Credit's motion for summary judgment, and we view the evidence in the light most favorable to the nonmoving party. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

### A.

The Beatties argue that the district court erred in granting Nations-Credit summary judgment on their SCUTPA claim. NationsCredit counters that it is exempt from SCUTPA liability. Section 39-5-40(a) of the SCUTPA provides that the Act does not apply to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law." In its initial order granting NationsCredit's motion for summary judgment, the district court held that the company was exempt. However, in response to the Beatties' motion for reconsideration, the court held that NationsCredit was not exempt because it had failed to show that its attempts to collect on the Beatties' account, after an LMS was filed, were required by or permitted under a statute or agency regulation.

The South Carolina Supreme Court has stated that this exemption "is intended to exclude those actions or transactions which are allowed or authorized by regulatory agencies or other statutes." *Ward v. Dick Dyer & Assocs., Inc.*, 403 S.E.2d 310, 312 (S.C. 1991). The *Ward* court indicated that the exemption is not meant to exclude *every* activity regulated by another agency or statute, rather it is meant to ensure that companies are not subjected to lawsuits for following an agency regulation or statute. *Id.* Therefore, NationsCredit is not protected from lawsuits for "general activity." *See id.* There is no indication that a statute or agency regulation requires or permits Nations-Credit to pursue collection and foreclosure activities on accounts purportedly satisfied by an LMS affidavit. Therefore, NationsCredit is not exempt from liability under the SCUTPA. Accordingly, we address the merits of the Beatties' claim that NationsCredit violated the Act.

The SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). In order to succeed on a SCUTPA claim, the Beatties must show

> (1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

*Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). The Beatties contend that NationsCredit engaged in an unlawful trade practice by falsely reporting to credit bureaus that their mortgage was in foreclosure. They also claim that they were damaged by this false report because they were denied credit by Mr. Bright. Finally, they assert that NationsCredit's false reporting had an adverse impact on the public interest.

The parties focused their attention, both in their briefs and at oral argument, on the third element of the analysis, the adverse impact on the public interest. We conclude, however, that the Beatties have failed to establish both the first and third requirements of their SCUTPA claim.

1.

Under South Carolina law, a trade practice is "unfair" when it is "'offensive to public policy or when it is immoral, unethical, or oppressive.'" *Johnson v. Collins Entm't Co.*, 564 S.E.2d 653, 665 (S.C. 2002) (quoting *Young v. Century Lincoln-Mercury, Inc.*, 396 S.E.2d 105, 108 (S.C. Ct. App. 1989), *rev'd in part on other grounds by* 422 S.E.2d 103 (S.C. 1992)). We assume the "public policy" referred to by the South Carolina Supreme Court is that policy created by applicable common law determinations, legislative enactments or constitutional provisions. *See Johnson*, 564 S.E.2d at 666.

The Beatties do not direct our attention to any specific common law, statutory or constitutional violation that might amount to an "un-

lawful trade practice," apparently relying upon what they perceive to be the general unfairness of inaccurate credit reporting. *See, e.g.*, *Havird*, 149 F.3d at 291 & n.2. Thus, we must consider the facts "surrounding the transaction and its impact on the market place" in determining whether or not a particular occurrence is unfair under the SCUTPA. *Young*, 396 S.E.2d at 108. After reviewing the record, we find as a matter of law that the Beatties have failed to establish the "wrongfulness of the defendant's actions." *Williams-Garrett v. Murphy*, 106 F. Supp. 2d 834, 845 (D.S.C. 2000). Assuming for the sake of argument that NationsCredit actually reported that the Beatties' mortgage was in foreclosure, such a communication cannot be seen as being immoral, unethical or oppressive. Indeed, although the words are clearly susceptible to interpretations to the contrary, it is not wholly unreasonable for NationsCredit to have believed, if it did so, that reference of the defaulted loan to its internal foreclosure department had placed the account "in foreclosure."

Notwithstanding the above analysis and in an effort to fully and fairly consider the Beatties' claim, we conducted our own search for potentially actionable public policy language that might support the finding of a SCUTPA-defined unlawful trade practice. Our quest revealed only one subsection of the Fair Credit Reporting Act ("FCRA") that might arguably suffice. That portion of the Act states that a supplier of information to a credit bureau "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). However, as outlined in more detail below, on the facts of this case, the FCRA does not provide the Beatties with a private cause of action. More specifically, this particular statutory language may be enforced only by federal and state agencies and officials, 15 U.S.C. § 1681s-2(d), and the prohibition appears to apply only to malicious and willfully intentional acts, transgressions neither alleged nor demonstrated in this litigation. *See* 15 U.S.C. § 1681h(e). Accordingly, the Beatties have failed to establish that NationsCredit engaged in "an unlawful trade practice" as required by *Havird*.

2.

We now evaluate the "public interest" element. Specific facts are required to prove an adverse impact on the public interest. *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). South Carolina law states that "the public interest prong of the [SCUTPA] inquiry [is] satisfied by evidence of a *potential for repetition* of the unfair or deceptive act." *Daisy Outdoor Adver. Co. v. Abbott*, 473 S.E.2d 47, 50 (S.C. 1996) (emphasis added). Thus, the Beatties must "alleg[e] and prov[e] facts" that demonstrate that NationsCredit's unfair practices, if any, have the potential for reiteration. *Id.* at 49. This may be done either by showing that similar unfair activities occurred in the past, making it more likely that they will occur in the future absent deterrence, or by showing that NationsCredit's procedures create a potential for repetition. *Id.* at 51.[5]

The Beatties produced the pleadings in a similar case, *Patricia W. McCain v. NationsCredit Financial Services Corp.*, No. 2000-CP-23-6932, filed in the South Carolina Court of Common Pleas for Greenville County on November 22, 2000, in support of the proposition that NationsCredit's unfair trade practices have a potential for reoccurrence. McCain alleged that NationsCredit, after an LMS was filed, falsely reported to credit reporting agencies that her mortgage was in foreclosure. The district court held that the *McCain* case was irrelevant to the Beatties' case[6] and rejected the "potential for repetition"

---

[5]The South Carolina Supreme Court specifically held that these are not the only ways to show a potential for repetition. *Daisy*, 473 S.E.2d at 51.

[6]The district court's decision that knowledge of the existence of the *McCain* case, standing alone, was irrelevant is seemingly based on an interrogatory presented to NationsCredit by the Beatties, which asked NationsCredit to list any actions brought against the company for improper billing, improper late fees, or billing errors. NationsCredit did not report the *McCain* case, and the Beatties filed a motion for sanctions. The district court denied this motion, saying that the *McCain* case did not allege improper billing or fees. In granting NationsCredit's motion for summary judgment on the Beatties' SCUTPA claim, the district court stated that "there were no specific factual allegations of improper billing, improper late fees, or billing errors in the *McCain* action that would tend to show that the facts supporting the *McCain* action would be relevant to the within action."

argument. We agree with the result reached by the district court but apply slightly different reasoning.

The Federal Rules of Civil Procedure state that

> [w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). Thus, the bare allegations of McCain's complaint offered without further evidentiary support did not establish an adverse impact on the public interest and were not sufficient to withstand NationsCredit's factually supported request for summary judgment. Accordingly, the Beatties failed to prove that NationsCredit violated the SCUTPA and the district court properly granted NationsCredit's motion for summary judgment on this issue.

## B.

The district court granted NationsCredit's motion for summary judgment on the Beatties' libel claim, stating that they failed to prove that NationsCredit submitted false information to consumer reporting agencies "with malice or willful intent," as required by the FCRA, 15 U.S.C. § 1681h(e).[7] The Beatties contend that their credit report was false and libelous because "the statements were published with such recklessness as to show a conscious indifference toward [their] rights." *Jones v. Garner*, 158 S.E.2d 909, 914 (S.C. 1968) (defining actual malice). The Beatties essentially argue that NationsCredit should not have reported their account as being in foreclosure to the

---

[7]"[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, . . . except as to *false information furnished with malice or willful intent to injure such consumer.*" 15 U.S.C. § 1681h(e) (emphasis added).

credit reporting agencies because the account was only being reviewed by NationsCredit's foreclosure department and no foreclosure *action* had been filed.

Even assuming that the credit report actually listed the mortgage as in foreclosure, a fact that is, as earlier indicated, only adopted for purposes of the summary judgment motion, NationsCredit did not report the alleged foreclosure "with malice" because, as we have noted, such a report was, at least in NationsCredit's view, accurate. "Malice" is established only if "the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. Ct. App. 2001). There is simply no such evidence. The district court properly granted summary judgment in favor of NationsCredit on this issue.

## C.

The Beatties also claim that NationsCredit was negligent in reporting the purported foreclosure to the credit bureaus. "To prevail in an action for negligence, the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damages to plaintiff proximately resulting from the breach of duty." *Trivelas v. South Carolina Dep't of Transp.*, 558 S.E.2d 271, 275 (S.C. Ct. App. 2001). The district court dismissed the Beatties' negligence claim, holding that, since the relationship between the Beatties and NationsCredit arises from contract, they cannot bring a tort claim without showing that NationsCredit had a duty independent of its contractual commitments. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995) ("In most instances, a negligence action will not lie when the parties are in privity of contract."). To overcome this obstacle, the Beatties claim an independent duty existed under the FCRA.

> In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he

is a member of the class of persons the statute is intended
to protect.

*Rayfield v. South Carolina Dep't of Corr.*, 374 S.E.2d 910, 914 (S.C.
Ct. App. 1988).

The Beatties do not specify which parts of the FCRA they rely
upon. It appears, however, that they attempt to invoke subsections (a)
and (b) of 15 U.S.C. § 1681s-2. But, under the facts alleged and prof-
fered, they are protected by neither section. Although NationsCredit
had a general duty under subsection (a) to report accurate informa-
tion, 15 U.S.C. § 1681s-2(a)(1)(A), the Beatties make no argument
that they complained to NationsCredit about the "in foreclosure" lan-
guage prior to filing this lawsuit, if they did so at that time, 15 U.S.C.
§ 1681s-2(a)(1)(B). Furthermore, 15 U.S.C. § 1681s-2(c) and (d) limit
enforcement of subsection (a) to "Federal agencies and officials and
. . . State officials." Likewise, subsection (b) is not applicable to the
Beatties because this portion of the FCRA imposes a duty on Nations-
Credit only after receiving notice that the Beatties filed a dispute with
a credit reporting agency, challenging the accuracy of a credit report.
15 U.S.C. § 1681i(a)(2). It is uncontroverted that the Beatties did not
dispute the accuracy of the reports. Also, as we have stated previ-
ously, the information NationsCredit reported to the credit bureaus
was accurate since the Beatties' account was "in foreclosure" because
it had been referred to NationsCredit's foreclosure department. There-
fore, the Beatties have failed to show that the FCRA provides an
actionable duty independent of the loan contract.

The Beatties also attempt to establish that NationsCredit was negli-
gent for failing to provide detailed receipts for payments made on the
mortgage, as required by the South Carolina Consumer Protection Act
("SCCPA"), South Carolina Code Annotated § 37-3-302. The district
court found that NationsCredit violated the SCCPA by failing to pro-
vide details of previous payments. However, the court also deter-
mined that the Beatties did not suffer any actual damages from this
violation. We agree with this assessment. Since the Beatties failed to
prove that they suffered any damages as a result of NationsCredit's
breach of duty under the SCCPA, the district court properly dismissed
the negligence claim.

III.

The district court appropriately granted NationsCredit's motion for summary judgment. We affirm.

*AFFIRMED*